### STATE OF ARKANSAS VS. WEBSTER et al.

INDICTMENT.   *Certainty in the description of the accused.*

An indictment against several persons, in which some of the parties were described by using the initials of their christian names, and the christian name of one of the parties was wholly omitted, held good on demurrer.

APPEAL from *Lonoke* Circuit Court.

Hon. J. J. CLENDENIN, Circuit Judge.

*Attorney General Hughes* for State.

Omission of defendant's first name will not vitiate an indict-ment.   *Commonwealth* v. *Kelcher,* 3 Metcalf, 485.   Gantt's Digest, sec. 1785.

The indictment shows the offense was committed in Lonoke county.

ENGLISH, CH. J.:

After the usual caption, the indictment in this case was as follows :

"The grand jury of Lonoke county, in the name and by the authority of the State, etc., accuse Q. T. Webster, Newt. J. Farris, John Graham, Hosea King, R. H. Maury, J. D. Els-berry, —— Johnson, H. G. Legate of the crime of riot, com-mitted as follows, viz: The said Q. T. Webster, Newt. J. Far-ris, John Graham, Hosea King, R. H. Maury, J. T. Elsberry,

—— Johnson, H. G. Legate, on the 3d day of June, 1875, in county and State aforesaid, being assembled unlawfully and riotously, did agree mutually to assist each other to unlawfully abuse, ill-treat and hang Cæsar Gartrall by force and violence, and said defendants above named, being so assembled as aforesaid, unlawfully and riotously did seize, ill-treat, abuse, and with force and violence then and there did hang the said Cæsar Gartrell by the neck in accordance with and in accomplishment of the said unlawful agreement, against the peace and dignity of the State of Arkansas."

A capias was issued for each defendant by the name given him in the indictment, and they were all arrested by the sheriff and brought into court, whereupon, by leave of the court, they filed the following demurrer :

" The State of Arkansas v. Q. T. Webster and others :

Come the defendants and say that the indictment herein is not sufficient in law, and they are not bound by the law of the land to answer the same, and for cause of demurrer show :

*First*—There is no sufficient statement of the names of the parties alleged to have been engaged in the riot.

*Second*—The offense is not charged to have been committed in Lonoke county.

*Third*—The indictment is otherwise uncertain, defective, informal and insufficient. Wherefore they pray judgment, and that said indictment be quashed."

The court sustained the demurrer and quashed the indictment, and the State appealed.

The indictment is under section 1506 Gantt's Digest, p. 365, seems to be in good form, except that the defendant Johnson is given no christian name, and four of the other defendants are described by initials instead of christian names.

By the common law the person charged by the indictment must be described by his christian or first name, and surname, and it seems that the law recognizes but one christian name. If the name of the party is unknown, and he refuse to disclose it, he may be indicted as "a person whose name is to the jurors unknown, but who was personally brought before them by the keeper of the prison," or some other mode of description by which it may be ascertained whom the grand jury meant. 1 Arch. Cr. P. 78 and notes.

When the indictment gives the defendant no christian or first name, or a wrong one, no surname or a wrong one, it is by the common law matter of abatement only. But this is now of no use (in England) for by statute 7, G. 4, C. 64, S. 19, no indictment shall be abated by reason of any dilatory plea or misnomer, etc., but in such case the court shall forthwith cause the indictment to be amended according to the truth, and call upon the party to answer thereto, and shall proceed as if no dilatory plea had been pleaded. 1 Arch. Cr. P. & P. 111.

In this State the practice was (before the adoption of the criminal code) where matter in abatement was successfully interposed, to hold the defendant to answer a new indictment in felonies, the court having no power to amend a bad indictment.

If the defendant on arraignment pleaded not guilty, it was not necessary for the State to prove his name as alleged, misnomer being matter in abatement only.

It may be that by the common law where a defendant is indicted by initials, instead of a christian name, and there is no allegation that the christion name is unknown to the grand jurors, the indictment is bad on its face.

But in the *City Council* v. *King*, 4 McCord, 271, where the defendant was charged by the description of A. W. King, the court said : "It surely will not be contented here (South Carolina) that a man may not take any name he pleases, and if he,

by his own conduct, renders it doubtful what his real name is, the fault is his, and let the consequences be also his. But in truth I know no law, nor do I see any reason why a man may not take the letter A. W. for his first name, or as it is generally called his christian name; for as there is no union here between church and state, and no obligation on parents to baptise their children, this name may be as often changed as the patronymic, and although we know that letters are usually the initials of a name, yet if a person uses them, and them only, it is difficult to perceive how his real name can be known, for if he is sued as Alexander William he may say they mean Andrew William, or any other name which may begin with those letters."

And in *Commonwealth* v. *Kelcher*, 3 Metcalf, (Ky.) 484, where the defendant was indicted as Mrs. Kelcher, and demurred to the indictment, the court said : "It is quite probable that appellee had a christian name, but there is nothing in the record from which the fact can be ascertained that she had one, and having admitted, by her demurrer, that the facts as stated in the indictment are true, it would follow as a necessary consequence, that she was correctly described and named therein."

But be this as it may; let it be granted that the indictment in this case, is bad on its face, by the common law, as to the defendant whose christian name is not given, and as to the other defendants, who are described by initials, instead of christian name should the court below, for such defects, have quashed the indictment.

The criminal code provides that, " An error as to the name of defendant shall not vitiate the indictment, or proceedings thereon, and, if his true name is discovered at any time before execution, an entry shall be made on the minutes of the court of his true name, referring to the fact of his being indicted by the name mentioned in the indictment, and the subsequent proceedings

shall be in the true name, substantially as follows: The State of Arkansas against A. B. indicted by the name of C. D." Gantt's Dig. sec. 1785, p. 405.

The statute is safer for the accused in one respect than the common law practice, for if he be misnamed and plead not guilty, whereby the misnomer is waived, the court will nevertheless cause his true name to be entered of record, when discovered, to protect him against a subsequent indictment for the same offense by his proper name; and it is better for the State, because it saves the trouble and expense of a second indictment when the first, on plea of misnomer, is held bad and quashed.

If the defendants not indicted by their proper christian names in this case, had pleaded this misnomer in abatement, they would have been bound to furnish their true names in the plea, and then instead of amending the indictment, and overruling the plea, as an English judge would do under the statute of George IV, above referred to, the court would have caused the names furnished to be entered of record, and overruled the plea.

But in this case the counsel for defendants are entitled to the credit of ingenuity for attempting to evade the statute, and avail the defendants of misnomers by demurrer, without disclosing their proper names. Can the manifest purpose of the statute be avoided by the mere mode of presenting the misnomer? We think not.

In the case of *Commonwealth* v. *Kelcher*, above cited, the appellee was indicted by the name of Mrs. Kelcher, for keeping a tippling house, by which name she was summoned, appeared and demurred to the indictment, because her first or christian name was not stated in the indictment. The court said: "The rule as laid down in some, if not all of the elementary works on criminal pleadings, is, that a person charged in an indictment

must be described by his first or christian name, as well as his surname, but that rule is changed in this state by the adoption of the criminal code." The court then quotes a section of the Kentucky code similar to the one above copied, and proceeds to say : " If the erroneous statement of the whole name of defendant would not vitiate an indictment, certainly the omission to set out the christian name of a defendant would not, and the objection to the indictment on that account must be regarded as unavailing." And after quoting another section of the code of Kentucky (and we have a like provision in our code, Gantt's Dig., sec. 1782), which provides that : " No indictment is insufficient, nor can the trial, judgment, or other proceedings thereon, be affected by any defect which does not tend to the prejudice of the substantial rights of the defendant on the merits ;" the court further say : " By which we understand that no defect in an indictment which would not, on the trial on the merits, deprive the defendant of some substantial right, shall be regarded." And adds : " Now if the appellee was not the person intended to be indicted, or if some one else bearing her surname was the person who had committed the offense charged, the omission of the christian name in the indictment would not deprive her of the privilege of showing the fact, nor could she thereby be deprived of any substantial rights upon the merits."

Moreover, three of the appellants, Newt. J. Farris, John Graham and Hosea King, seem to have been indicted by their christian names, and why the court below quashed the indictment as to all of the appellees, for a supposed fatal defect in setting out the christian names of some of them, we are at a loss to understand.

Chitty says : " If matters in abatement be pleaded by one of several defendants, and allowed, it will only quash the indict-

ment as to him, without affecting it as to those who are correctly indicted." Chitty Cr. L., 450.

We are not aware that the rule is otherwise on motions to quash, or on demurrers, for such defects as are complained of in this case.

The judgment must be reversed and the cause remanded, with instructions to the court below to overrule the demurrer to the indictment.